JANUARY TERM, 1881, No. 199.　　　　　　MARCH 1ST, 1882.

# The Junior Steam Fire Engine Company of the City of Reading *versus* Douglas *et al.*

1. Where the only evidence of an acknowledgment of the debt was a request by the defendant to the plaintiffs, within the six years, not to push their claim, and a postponement by the plaintiffs of suit in consequence, it was error to leave it to the jury to determine whether the claim had been barred by the statute of limitations.

2. The Court ought to have instructed the jury that the claim was barred by the statute.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Berks County.*

Assumpsit by James Douglas and Henry Connard, trading as Douglas & Connard, against The Junior Steam Fire Engine Company of the City of Reading, to recover the amount of a bill for fixtures and repairs to a steam fire engine.

The defendant pleaded, *inter alia,* the statute of limitations.

Upon the trial in the Court below the following facts appeared: The claim of the plaintiffs was made up of four items, viz.: August 13th, 1872, for fixtures and putting up a pump, $102.40; October 21st, 1872, for repairing steamer and material, $273.68; January 3d, 1873, for repairing steamer, labor and material, $87.12; and January 15th, 1873, for repairing engine, labor and material, $27.17. Suit was commenced January 8th, 1879.

In the summer of 1872, the supply of water in the city of Reading having failed, the Water Board of the city, June 11th, resolved, "That, as a matter of temporary relief, until

[The Junior Steam Fire Engine Company of Reading *v.* Douglas *et al.*]

arrangements can be made, the Junior Fire Company be employed for the purpose of forcing water from the Schuylkill River into the main water pipes." After the pumping had been done it was found that the engine had been pretty well wrecked. On the 23d of July, 1872, the Water Board resolved, "That the Junior Fire Company be instructed to take their steam fire engine to the shops of Messrs. Douglas & Connard, for the purpose of having repaired the damages done to the same while in the service of this Department, in pumping Schuylkill water into the main water pipes of the city." The secretary of the board sent this resolution in a letter to Henry A. Brown, President of the Fire Engine Company. Brown went to the plaintiffs and showed them the letter, whereupon Mr. Connard said, "All right, send her down." The plaintiffs did the work, and on the 7th of July, 1873, the Water Department of the city paid on account of the bill $73.68.

Henry Connard, one of the plaintiffs, testified that in 1874 and 1875, he presented the bill to a representative committee of the defendant company.

"Q. What was said when you presented the bill?

"A. As far as I recollect they did not have any money to pay it with, and at one time they wanted to wait until they got their appropriation from Council to pay it; at another time they wanted the city to pay it for us. Those were the only objections to paying it. They did not have any other objection that I know of.

"Q. The bill was made out against the fire company itself?

"A. Certainly, we did not recognize anybody else but the fire company; we were willing to take it from anybody else who chose to give it to us.

"Q. If anything else was said, state it.

"A. They wanted it put off. A man by the name of Flickinger was one of them. I met Brown on the street at different places, and he talked to me about the bill. The letter that I wrote was in 1875, and afterwards I met him on the street and talked to him about it."

James Douglas, one of the plaintiffs, testified, *inter alia:*

"The company officials told me that we should present the bill to the Water Department of the city, and they would pay it. . . . .

"Q. You gave the amount to Mr. Mengel to collect?

"A. Yes, sir.

"Q. And then he notified the defendants?

"A. Yes, sir.

"Q. What did they do?

[The Junior Steam Fire Engine Company of Reading *v.* Douglas *et al.*]

" A. There was a committee called upon me to see what settlement or what arrangement could be made, and they did not want us to push them.

" Q. When was that?

" A. I cannot tell; it was after the bills had been presented ; it was in 1875 or 1876, probably.

" Q. Who came?

" A. Mr. Flickinger and Mr. Henry Brown, here.

" Q. And on the strength of that you went to Mengel not to bring the suit ?

" A. I went to Mengel to postpone that suit; I was anxious to settle with the company rather than go to law about it."

Henry Brown, for the defendant, on cross-examination testified :

" Q. Didn't you get a copy of the account against the company, made out against it ?

" A. Not the first bill ; the first bill was made out against the city as far as I know ; at least the city paid a portion of the bill.

" Q. Did you ever see a bill made out against the city ?

" A. No, sir.

" Q. Why do you say that account was made out against the city?

" A. Because a part of the bill was paid ; I saw it on the minutes."

\* \* \* \* \* \* \*

" Q. When you got down there didn't you tell him that they charged this against the wrong party ?

" A. Why, yes, that they knew.

" Q. What did you tell them?

" A. That the bill did not belong to us ; we always told them that the bill did not belong to us.

" Q. Did you tell Mr. Connard that ?

" A. Yes, sir ; we told him the bill did not belong to us; we told him this—I recollect saying this, that we would try and influence the Water Board or Council to pay it; that we would use all effort we could, so that they would get their money. The engine was all torn to pieces and had to be overhauled ; and we told him we would get the city to pay it for him ; we promised that and we will do it to day. We cannot afford to pay it, because it did not belong to us."

The Court left it to the jury to ascertain whether the work was done for the city of Reading under the resolution of the Water Board and letter, whether there was any evidence in the cause that the city was the agent of the defendant company, and charged, *inter alia :*

" You have the testimony of Mr. Brown, who says he be-

[The Junior Steam Fire Engine Company of Reading *v.* Douglas *et al.*]

lieves he was president of the company at the time he received Mr. Mengel's letter, and that he went to see Douglas & Connard. [If you find, as testified to by Mr. Brown, that he was the president of the company, and that he with Mr. Flickinger was a committee appointed by the company to wait upon Douglas & Connard, and asked them to postpone the pushing of that claim, that is a recognition of the claim, and the statute of limitations would not run until you start from that period and make it six years beyond, for it would be a monstrous doctrine to suppose that a committee could go to a firm, which had a claim against a company, and say to them, ' Do not push us, but wait,' and when the party complies with that request, after that to say : ' Well, six years have gone by since you first did the work, and you now have no claim upon us '] If the jury find that there was a committee who waited upon Douglas & Connard, authorized by this company, and that they at that time asked that this claim should not be pushed, the fact that time was given by Douglas & Connard before they brought their suit to pay this claim, the statute of limitations did not run until from that time, whenever that was. There is no pretence that the statute would run against that. That was shown to be either in 1874, 1875 or 1876, and the suit was brought January, 1879. If this committee came there and induced the plaintiffs to wait for their claim, then the question arises, how much did the company owe on that day, and whatever was the legal claim against the company at that time, the statute of limitations has no application thereto."

Counsel for defendant excepted to so much of the charge as submitted to the jury the evidence of acknowledgment of indebtedness, offered to take it out of the statute of limitations.

November 3d, 1880. Verdict for the plaintiff $499.33, on which judgment was subsequently entered.

The defendant then took out a writ of error, assigning as errors that :

1. The Court erred in leaving to the jury the evidence offered in this case to prove an acknowledgment of indebtedness within six years, to take the case out of the statute of limitations.

2. The Court erred in not instructing the jury that the whole of plaintiffs' claim, excepting $27.17, was barred by the statute of limitations, and that the evidence offered was not sufficient to remove the bar.

3. The Court erred in not charging the jury that the acknowledgment, if any, was qualified and would not justify

[The Junior Steam Fire Engine Company of Reading *v.* Douglas *et al.*]

them in presuming a promise to pay, under all the evidence in the cause.

4. The Court erred in charging the jury as above, in brackets.

5. The Court erred in not instructing the jury that there could be no recovery under all the evidence, except for the charges of $27.17.

*Richmond L. Jones*, for plaintiffs in error, cited Bank *v.* Patton, 2 Harris, 479; Hogan *v.* Bear, 5 Watts, 111; Suter *v.* Sheeler, 10 Harris, 308; Forney *v.* Benedict, 5 Barr, 225; Weaver *v.* Weaver, 4 P. F. Smith, 152.

*H. Willis Bland* and *Matthias Mengel*, for defendants in error.

The constructive acknowledgment of a debt arising from part payment within six years before suit brought is sufficient from which to infer a promise to pay: Burr *v.* Burr, 2 Casey, 285; Shaffer *v.* Shaffer, 5 Wright, 51.

That the payment was made by the city for the company is evident, because the company's minutes contained a note of the credit.

Acting under the direction of the company, plaintiffs presented the bill to the city, July 3d, 1873, and the city then paid (for the company) on account of the claim the sum of $73.68.

But that the conduct of the company was sufficient to prevent the operation of the statute of limitations, is apparent from: Cowan *v.* Magauran, Wall, 65; Fries *v.* Boisselet, 9 S. & R., 128; Eckert *v.* Wilson, 12 S. & R., 393; Bailey *v.* Bailey, 14 S. & R., 195; Gilkyson *v.* La rue, 6 W. & S., 213; Johns *v.* Lantz, 13 P. F. Smith, 326; Davis *v.* Steiner, 2 Harris, 275; Hazlebaker *v.* Reeves, 2 Jones, 264.

The opinion of the Court was delivered by GREEN, J.

It is difficult to account for the verdict of the jury in this case. The learned judge of the Court below indicated with extreme plainness in his charge, that there was no sufficient evidence that the work was done at the instance of the defendant, and in this he was undoubtedly right.

It is beyond question that the principal work on the engine, for which recovery is sought against the Fire Engine Company, was ordered to be done by the Commissioners of Water of the city of Reading, by a positive resolution to that effect. The resolution was given in evidence, a copy of it was shown to the plaintiffs before the work was done, and they thereupon directed the defendant to send the en-

[The Junior Steam Fire Engine Company of Reading *v.* Douglas *et al.*]

gine to them, in order that they might do the repairs. Work was done at different times and the claim for the whole of it, except the last item, $27.17, was barred by the statute of limitations at the time suit was brought. As to that item, we do not understand that the liability of the company was disputed   But as to all the rest, the statute of limitations was pleaded, and the case comes before us chiefly on assignments of error which question the correctness of the charge as to the operation of the statute. The learned judge left it to the jury to say whether there was sufficient proof of an acknowledgment to take the case out of the statute.   We have read the whole of the testimony printed in the paper-books, and are constrained to say we regard it as entirely insufficient for this purpose.   In point of fact, the officers of the company, with whom the plaintiffs communicated, uniformly denied the liability of the defendant.   Thus, Henry Brown, the President of the company, and the person with whom the conversations, testified to by the plaintiffs, were had, said in reply to questions:

" Q. When you got down there, didn't you tell him (Connard) that they charged the wrong party ?

" A. Yes, sir ; that they knew.

" Q. What did you tell them ?

" A. That the bill didn't belong to us.   We always told them that the bill didn't belong to us.   We told him this. I recollect saying this, that we would try and influence the Water Board or Council to pay it; that we would use all efforts we could so that they would get their money."

The foregoing is some of the language relied upon by the plaintiffs as evidence of an acknowledgment of the debt. The same witness also testified : " We never acknowledged the bill; we always told them we were trying to help them get it through Council ; I don't know that we ever acknowledged that the company ought to pay the bill."

The other language, upon which the plaintiffs relied as proof of an acknowledgment, was the following:

" Q. What was said when you presented the bill?

" A. As far as I recollect, they did not have any money to pay it with, and at one time they wanted to wait until they got their appropriation from Councils to pay it, at another time they wanted the city to pay it for us ; those were the only objections to paying it ; they did not have any other objection that I know of."

And the following :

" Q. What did they do ?

" A. There was a committee which called upon me to see

[The Junior Steam Fire Engine Company of Reading *v.* Douglas *et al.*]

what settlement or what arrangement could be made, and they did not want us to push them."

It is almost needless to say, or to cite authorities to prove, that none of this language fulfils the requirements of the decisions. It contains neither a promise to pay nor any acknowledgment of the debt consistent with a promise to pay.

It is unnecessary to quote the numerous decisions of this Court on this subject, as a reference to one or two of the most recent will fully express the meaning of them all.

In Weaver *v.* Weaver, 4 P. F. S., 152, we said " that in order to take a case out of the statute of limitations, the acknowledgment of the debt must be clear and unequivocal, otherwise it is not equivalent to a promise to pay, and it ought to be so distinct in its extent and form as to leave no room for doubt or hesitation." In Wesner *v.* Stein *et al.*, 10 W. N. C., 480, MERCUR, J., said : " It is settled that the acknowledgment or admission must be by a clear and unambiguous recognition of an existing debt, and so distinct and expressive as to preclude hesitation as to the debtor's meaning, and as to the particular debt to which it applies, and must be consistent with a promise to pay." See also Watson's Exrs. *v.* Stem, 26 P. F. S., 121, and Palmer *v.* Gillespie, 9 W. N. C., 535. In the present case the learned judge of the Court below laid great stress upon the testimony that the plaintiffs were requested by the committee of the defendant not to push the claim, and charged directly that this would constitute a recognition of the debt, and would stop the running of the statute. We cannot agree to this. The testimony given in the same connection, proves clearly that it was not intended to recognize the claim as the debt of the defendant, but independently of this, a mere request to delay bringing suit is not at all inconsistent with a denial of liability. A person may be willing to buy his peace, even though he may not consider himself liable to a claim made against him, and for that purpose may request a temporary delay of proceedings, without thereby admitting his liability.

In this case the suggestion to delay suit is abundantly explained by the other testimony, to the effect that the committee of the defendant were anxious that the plaintiff's bill should be paid by the city, and were endeavoring to get the city Council to agree to it. It is, moreover, perfectly manifest that it was constantly declared by the persons representing the company, that the defendant was not liable for the debt, and that the city alone was responsible for it. In these circumstances we are of opinion that the

learned Court below was in error in leaving to the jury the question of the sufficiency of the testimony, to take the case out of the operation of the statute of limitations, and the assignments of error are all sustained.

Judgment reversed.